**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

ELAINE R. BUSH,

       Plaintiff,

      v.                                      CV No. 04-457 JEC/RS

MICHAEL MUKASEY,
Attorney General of the United States,

       Defendant.

**MEMORANDUM OPINION & ORDER**

THIS MATTER comes before the Court on *Defendant's Motion for Summary Judgment*, filed on December 18, 2007 (*Doc.* 33)("Motion").  The Court, having considered the Motion, the parties' briefs, the relevant authority, and being otherwise fully advised, GRANTS the Motion.

**I.**     **Background**

The following facts are either undisputed or viewed in a light most favorable to the Plaintiff as non-moving party.  In August 1998, the U.S. Marshals Service ("USMS") hired Elaine Bush ("Plaintiff") as a GS-13 Systems Administrator. Plaintiff remained so employed for nearly seven years.  On or about April 16, 2005, Plaintiff alleges that a "continuing pattern of discrimination, interference, hostility and retaliation caused her to eventually resign her position with the U.S. Marshals Service."  Second Am. Compl. at 5.

During her employment with the USMS, Plaintiff filed three separate employment discrimination complaints with the Equal Employment Opportunity Commission ("EEOC").

1

The first EEO complaint related to the USMS' denial of her request for an alternate work schedule, which she alleged occurred in retaliation for her inability to immediately perform a computer support request for one of her supervisors.  The second EEO complaint alleged discrimination on the basis of gender, disability and retaliation for participation in protected EEO activities, and the third complaint again alleged discrimination on the basis of gender and retaliation for her previous EEOC filings.  She later amended this charge, stating that two months after the third complaint, as a result of a hostile work environment and continued retaliation, she was constructively discharged.  As to the first complaint, the EEOC Office of Federal Operations affirmed the agency's decision finding no discrimination.  As to the second and third complaints, the United States Department of Justice ("DOJ") issued final agency decisions for each, finding no discrimination.

On May 15, 2004, Plaintiff filed a Complaint in the United Stated District Court for the District of Utah.  On September 26, 2005, the case was stayed pending Plaintiff's exhaustion of administrative remedies.  On January 19, 2007, the DOJ issued a final decision on Plaintiff's administrative complaints. On June 11, 2007, Plaintiff filed her Second Amended Complaint alleging gender disparate treatment, constructive discharge, disability discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 e-5(f)(1) and (3); §102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.S. § 791 *et seq*.[1]  Defendant, Attorney General Michael B.

---

[1]Plaintiff withdrew an additional claim for Whistleblower retaliation.  Resp. at 34.

Mukasey, presently moves the Court for summary judgment on all claims.[2]

## II.   <u>Legal Standard</u>

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P 56(c).  To overcome summary judgment, "the movant need only to point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 674 (10th Cir. 2002).  The Court will grant summary judgment "if the movant establishes entitlement to judgment as a matter of law given [the] uncontroverted, operative facts. . . .  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  The party opposing the motion may not rest on mere allegations or denials of pleadings, but must set forth specific facts showing a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The court may grant summary judgment "if the non-moving party's evidence is merely colorable[] or is not significantly probative." *Id.* at 250-51 (citations omitted).  "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the

---

[2] 42 U.S.C. § 2000e-16(c) provides that in a Title VII suit against an agency of the DOJ, the proper defendant is the head of that agency.  *See, e.g., Dean v. United States*, 484 F. Supp. 888, 889 (D. N.D. 1980); *Farrell v. United States DOJ*, 910 F. Supp. 615, 618 (M.D.Fla. 1995)("[I]n federal employment discrimination suits under Title VII the only proper defendant is the head of the department, agency or unit against which discrimination is alleged.").  Pursuant to FED. R. CIV. P. 25(d)(1), Michael B. Mukasey is the only proper defendant in this action.

evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

III.    **Discussion**

      A.    **Gender Disparate Treatment**

      In Count 1 of her Second Amended Complaint, Plaintiff alleges discrimination on the basis of gender disparate treatment.  In evaluating a claim of disparate treatment based on indirect evidence of discrimination, the Tenth Circuit has adopted the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); s*ee also Adamson v. Multi Cmty. Diversified Servs.*, No. 05-3478, 2008 U.S. App. LEXIS 2418, *4 (10th Cir. Feb. 1, 2008)(applying traditional *McDonnell Douglas* framework to gender discrimination claims). To establish a prima facie claim under this framework, Plaintiff must first demonstrate that: (1) she belonged to a protected class; (2) she suffered an adverse employment action; (3) she was qualified for her position; and (4) she was treated less favorably than others not in the protected class.  *See e.g. Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1380 (10th Cir. 1994).  Plaintiff has met elements one and three, for she is in a protected class as a woman and worked as a systems administrator for the USMS for almost seven years.  *See MacDonald v. Eastern Wyoming Mental Health Cente*r, 941 F.2d 1115, 1121 (10th Cir. 1991)(holding evidence that employee held position for a significant period of time sufficient to demonstrate that employee continued to possess qualifications).  The third and fourth elements are at issue here.

      "To be an adverse action, the employer's conduct must be materially adverse to the employee's job status."  *Kirk v. City of Tulsa*, 2003 U.S. App. LEXIS 14387, *10 (10th. Cir. July 16, 2003)(quoting *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1213 (10th Cir. 2003)).  This

standard is satisfied by demonstrating "a significant change in employment status, such as . . . firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1213 (10th Cir. 2003)(internal quotation marks omitted).  Moreover, though the Tenth Circuit continues to liberally define the phrase "adverse employment action" and takes a case-by-case approach, *see, e.g., Stinnett v. Safeway*, 337 F.3d 1213, 1217 (10th Cir. 2003), it does not consider "a loss of authority that was [not] severe or prolonged enough [to constitute] a materially adverse reduction in job responsibilities." *Wells*, 325 F.3d at 1214 (internal quotations omitted).

Defendant contends that Plaintiff has not met her burden of establishing a *prima facie* case of disparate treatment because she has failed to (1) establish that she was subjected to an adverse employment action and (2) establish that she was treated differently than a similarly situated male employee, Eric Gallegos.  Further, Defendant maintains that the scope of an adverse employment action "does not extend to a mere inconvenience or an alteration of job responsibilities." *Tran v. Trs. of the State Colls. in Colo.*, 355 F.3d 1263, 1267 (10th Cir. 2004)(quoting *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000)).

Plaintiff claims that Defendant engaged in the following nine adverse employment actions: (1) denied her the opportunity to act as acting supervisor and interfered with her systems administration duties; (2) interfered with her computer security duties; (3) withheld information from her, bypassed her and refused to allow her to give input on matters related to office computers; (4) installed and moved computers, software and equipment; (5) engaged in hostility and discrediting of her computer expertise and her authority as a systems administrator; (6)

5

interfered with her duty to review the procurement of agency computer systems and software; (7) brought another systems administrator into her work area; (8) failed to support her job performance and subjected her to extreme scrutiny, exclusion and sabotage; and (9) denied her crucial training.  Second Am. Compl. at 8-38.  As set forth below, the summary judgment evidence does not support a finding that these constitute adverse employment actions.

Plaintiff's allegations that she was denied the opportunity to perform as an acting supervisor and that her requests to not have other systems administrators work in her district office were ignored, with nothing more, did not affect her employment status.  Other allegations, such as Plaintiff's position that various co-workers informed her that they had never been required to get their time signed off or initialed while she did, Second Am. Compl. at 13, are not supported by affidavits or evidence of any kind.  In addition, the bald allegations that her supervisor, Chief James Thompson, performed tasks without her approval or knowledge or her conclusory allegation that another employee told her that her supervisor suggested she be prevented from accessing certain computers due to her previous EEO complaints do not equate in any way to gender disparate treatment.  Again, Plaintiff has submitted no independent evidence in support of these allegations.  Notably, Plaintiff's arguments focus solely on her deposition testimony and her "beliefs and feelings" that she was singled out by her supervisors because she is female, Mot., Ex. A, p. 92, yet Plaintiff has introduced no evidence of gender based harassment.  Plaintiff states that there were no "overt comments about being a woman, but it was a feeling of the way [he] continually treated me, placed no value on anything I suggested. No matter what I did, it wasn't good enough."  Mot., Ex. A, p. 92.  Though Plaintiff might make a case that her supervisors' actions indicated a lack of respect or courtesy, such opinions do not

amount to adverse employment actions.

Plaintiff disputes Defendant's argument that adverse employment action "can only take the form of ultimate actions that affect an employee's pocket book - such as terminations, demotions, pay cuts, etc." Resp. at 11. Plaintiff relies on two cases, *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) and *Piercy v. Maketa*, 480 F.3d 1192 (10th Cir. 2007), to support the proposition that changing one's job responsibilities may be considered an adverse employment action. Such arguments are misplaced. In *Stinnett*, the Tenth Circuit considered the narrow question of "whether a required return of an employee from a temporary position to her permanent assignment constitutes an 'adverse employment action'. . . ." The complainant, who began working as a retail meat-wrapper, received temporary work on a data processing assignment. After that assignment was complete, complainant received another temporary assignment before being told after four months that there was not enough work for her to continue in the temporary capacity. After her employer realized that there was also little work in her original capacity as a retail meat-wrapper, she was returned to a temporary post, this time as an assistant field technician. The plaintiff spent eight months in that capacity, working forty-hour weeks maintaining computer equipment. When she was informed that there was no longer a need for an assistant field technician, she was returned to her original position as a meat-wrapper. The Circuit found there to be "evidence that the reassignment resulted in a *de facto* reduction in responsibility and required a lesser degree of skill." *Stinnett*, 337 F.3d at 1217.

Here, unlike *Stinnett*, Plaintiff was not reassigned to a different job function with significantly different responsibilities after an extended period of time in an unrelated position. Plaintiff's reliance on *Piercy* fails for substantially the same reasons. In *Piercy*, a female deputy

sheriff was denied a transfer request to a male inmate only maximum security prison facility

after the El Paso County Sheriff's Office posted a job opening at the Metro jail for male deputies

only.  The Circuit held that "the differences in duties between the two prisons [were] sufficiently

substantial to preclude the district court's finding that a transfer to Metro from CJC would be

purely lateral."  *Id.* at 1205.  The Circuit remanded on the issue of whether plaintiff's inability to

transfer to the Metro facility was an adverse employment action, where there was evidence in the

record that work was less stressful at the Metro jail and offered additional job and leave

flexibility.  Here, unlike *Piercy*, Plaintiff has presented no evidence that she was denied a

transfer request or that there were other opportunities for her to seek out within the department.

The examples of adverse employment action alleged by Plaintiff include the Defendant "making

her" perform another male employee's job duties while constantly micro-managing her activities

in the workplace. Again, Plaintiff offers no evidence beyond mere conjecture and conclusory

statements.  *Gross v. Burggraf,* 53 F.3d 1531, 1546 (10th Cir. 1995)(holding that unsupported

allegations, conclusory in nature, are insufficient to defeat a motion for summary judgment).

Moreover, assuming arguendo that any of the alleged acts above constituted adverse

employment actions, Plaintiff has failed to demonstrate that she was treated differently than the

only similarly situated male employee she identifies, Eric Gallegos.  As Defendant notes, in

order to demonstrate disparity in treatment from a male employee, a plaintiff "must establish that

she was similarly situated . . . in all relevant aspects."  *McGowan v. City of Eufala*, 472 F.3d 736,

745 (10th Cir. 2006)(internal citations omitted).  Plaintiff's own testimony establishes that she

was hired as a computer specialist, systems administrator, level GS13.  Mot., Ex. A, 6:25-7:10.

By comparison, Eric Gallegos was hired in a supervisory role as an administrative officer, level

GS12.  Mot., Ex. C.  An examination of the two positions clearly indicates that a meaningful

comparison cannot be made as the two employees have different job titles and pay grades, as

well as entirely different functions as detailed in their respective job descriptions.  *See* Mot., Ex.

B, p.2 and Ex. C, p. 2.  In summary, Plaintiff has failed to demonstrate that an issue of material

fact exists as to whether she suffered disparate treatment based on gender.

**B.      Hostile Work Environment/Constructive Discharge**

Plaintiff alleges that a hostile work environment aggravated her anxiety and depression

and left her with no choice but to resign.  In order to survive a motion for summary judgment on

a gender hostile work environment claim, "a plaintiff must show that a rational jury could find

that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment," *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir.

1998).  Plaintiff must further demonstrate that she was targeted because of her gender.  *Chavez v.*

*New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005); *see also, Penry v. Fed. Home Loan Bank*, 155

F.3d 1257, 1261 (10th Cir. 1998)(a plaintiff must produce evidence from which a rational jury

could infer that the employee was targeted for harassment because of her gender, race, or

national origin).  "Whether an environment is hostile or abusive can be determined only by

looking at all the circumstances including the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance."  *Davis v. U.S. Postal*

*Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (quotation omitted).  "Essentially, a plaintiff must

show that she had no other choice but to quit.  The conditions of employment must be

objectively intolerable; the plaintiff's subjective views of the situation are irrelevant." *Sandoval v. Boulder Reg'l Communs. Ctr.*, 388 F.3d 1312, 1325 (10th. Cir. 2004)(citing *Sanchez v. Denver Public Schools*, 164 F.3d 527, 534 (10th Cir. 1998).

In alleging the presence of a hostile work environment, Plaintiff argues that her case is "not in the typical context of being subjected to sexual harassment, but again in less dramatic forms such as supervisory methods, work responsibilities and overall work environment." Resp. at 2. Nonetheless, Plaintiff has not produced any evidence of workplace intimidation, ridicule, insult or anything else that could be perceived as objectively intolerable, let alone evidence supporting a work environment hostile to women. Plaintiff's scant allegations do not support a factual finding that her working environment was "permeated" with sexist intimidation, ridicule and insult. Though the Court is mindful that job-related stress is often present in the workplace, such stress should not be confused with an environment ripe with hostility. The Tenth Circuit in *Trujillo v. Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir. 1998) explained that "[n]ormal job stress does not constitute a hostile or abusive work environment." In citing the Seventh Circuit, the Tenth Circuit explained that federal law "'does not guarantee a utopian workplace, or even a pleasant one . . . Personality conflicts between employees are not the business of the Federal courts.' We cannot villify every supervisor that implements a policy with which an employee disagrees or that monitors her employees' conduct." *Id.* at 1214 (internal citations omitted).

Further, Plaintiff has failed to produce any affidavits or elicit testimony from co-workers who may have witnessed any alleged harassment or could dispute Defendant's assertions. For example, Plaintiff alleges that one of her supervisors, Doug Young, stated that she is competent

10

and able to handle things in a timely manner.  Second Am. Compl. at 28.  Yet, Plaintiff has

failed to produce any competent summary judgment evidence to corroborate her assertions.  Her

conclusory allegation that "due to the constant focusing by management of her competence, her

ability to perform her job, her attendance and her travel, she was in constant fear of losing her

job," fails to demonstrate the presence of a gender hostile work environment claim.

  With respect to the constructive discharge portion of her claim, Plaintiff must

demonstrate that "(1) [] she suffered harassment or discrimination so intolerable that a

reasonable person in the same position would have felt compelled to resign . . . ; and (2) [her]

reaction to the workplace situation--that is, [] her decision to resign--was reasonable given the

totality of circumstances . . . ."  *Penn. State Police v. Suders*, 542 US 129, 139 (2004); *see also*

*EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 805 (10th Cir. 2007)(Plaintiff must demonstrate the

working conditions to have been not only adverse but intolerable).  Logic dictates that if Plaintiff

cannot establish that she suffered an adverse employment action, then she clearly cannot show

that her workplace was intolerable.  *See Penn. State Police*, 542 U.S. at 147 ("A

hostile-environment constructive discharge claim entails something more: a plaintiff who

advances such a compound claim must show working conditions so intolerable that a reasonable

person would have felt compelled to resign.").  With the exception of her own self-serving

deposition testimony, Plaintiff has failed to present an issue of material fact as to how her

resignation was the result of illegal discriminatory conduct.[3]

---

  [3] A nonmovant's conclusory and self-serving affidavit, without other supporting
evidence, is insufficient for the purpose of surviving summary judgment. *Salguero v. City of
Clovis*, 366 F.3d 1168, 1177 n.4 (10th Cir. 2004)

C.      **Disability Discrimination**

Plaintiff alleges that she suffers from anxiety and depression that substantially limit "one or more of her major life activities, including interacting with other people [and] sleeping . . . ."[4] Second Am. Comp. at 38.  To demonstrate a prima facie case of disability discrimination under § 504 of the Rehabilitation Act ("Act"), Plaintiff must establish that (1) she is disabled under the Act; (2) she is "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against her. *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1151 (10th Cir. 1999).  Congress amended the Act in 1992 to include the same "standards applied under title I of the Americans with Disabilities Act." *See McGeshick v. Principi*, 357 F.3d 1146, 1150 (citing 29 U.S.C. § 794(d)).

Under the Americans With Disabilities Act ("ADA"), disability is defined as "(A) a physical or  mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Accordingly, Plaintiff must demonstrate that her impairment "substantially limits at least one major life activity."  *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117 (10th Cir. 2003).

Plaintiff has alleged that "consistently high levels of hostility [in the workplace]" led to "anxiety and depression [that] caused her to withdraw socially."  Resp. at 26.   In countering Plaintiff's claim that she suffered social withdrawal, the Defendant argues that it is undisputed that Plaintiff "engaged in activities that involved others in her family and community during the

---

[4]Plaintiff has withdrawn two additional claims she raised based upon the "major life activities" of traveling and working.  Resp., at 27-28.

entire time she suffered from anxiety and depression."  Reply at 3.  Plaintiff's own testimony establishes that she suffered from depression and anxiety long before obtaining employment with the USMS.  Resp., Ex. A at 26, ln.18-29.  Though her employment situation may have exacerbated her condition, "[i]n order to demonstrate a plaintiff's major life activity of interacting with others was substantially affected, a plaintiff must show that [her] relations with others were characterized on a regular basis by severe problems, for example, consistently high levels of hostility, social withdrawal, or failure to communicate when necessary."  *Steele v. Thiokol Corp.*, 241 F.3d 1248,1255 (10th Cir. 2001)(internal quotations omitted).  "[M]ere trouble getting along with coworkers is not sufficient to show a substantial limitation."  *Steele*, 241 F.3d at1255 (internal quotations omitted).  Here, Plaintiff has failed to put forth any evidence that she had severe problems interacting with people in general.  This is undisputed when, by her own admission, she attends craft shows with friends, attends sporting events and is intimately involved in family activities.  Resp. at 7-8.  Accordingly, the Court finds that Plaintiff's anxiety and depression have not limited her ability to interact socially.  See *Doebele*, 342 F. 3d at 1130, n.5 (Under proper circumstances, a district court may decide whether an impairment substantially limits an asserted major life activity at the summary judgment stage).

Similarly, with respect to Plaintiff's claim that the environment at work prevented her from sleeping, she readily admits that her panic attacks occurred "maybe once a week," resulting in "maybe three hours of sleep a night to maybe six . . . ."  Resp. at 8, ¶ 22.  Though the Tenth Circuit has previously held sleeping to be a major life activity, *see Pack v. Kmart Corp.*, 166 F. 3d 1300, 1305 (10th Cir. 1999), Plaintiff cannot establish that her sleep patterns, which have been assisted with the aid of medication, are sufficiently severe as compared to the average

person or that she currently suffers panic attacks or a lack of sleep. *See id.* (One's ability to sleep is measured based upon three factors: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent long term impact, or the expected long term impact of or resulting from the impairment). Plaintiff has failed to raise a material issue of fact as to whether her impairments substantially affected her ability to interact with people in general on a regular basis or to interfere with her ability to sleep.

### D.    Retaliation

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must demonstrate "(1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action." *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006). "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982). "Unless the [adverse action] is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Notwithstanding, "[n]ot everything that makes an employee unhappy qualifies as retaliation, for otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *West v. Norton*, 376 F. Supp. 2d 1105, 1126 (D.N.M. 2004)(quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1301 (3d Cir. 1997)).

Plaintiff claims that in retaliation for filing EEOC complaints, she was subjected to the following materially adverse actions over the course of her employment:

> denying her opportunities to act as an acting supervisor, making challenges to her authority, interfering with her assigned job duties, isolating her, not affording her respect as she performed her position, bypassing her, withholding of information from her, denying her training, denying her sick leave, failing to acknowledge and take action on her notifications to the district office/headquarters of breaches of computer security policies and that she found pornography on a coworkers computer hard drive, and otherwise and additionally creating of [*sic*] a hostile work environment.

Second Am. Compl. at 47.  Plaintiff also alleges that her receipt of a letter of instruction dated February 24, 2004 and her placement on a performance improvement plan in December 2004 were additional examples of unwarranted adverse performance actions.  *Id.* at 47-48.

Defendant does not contest that Plaintiff has met the first element of her claim by virtue of having filed three separate EEOC complaints.  Defendant argues, however, that none of the above allegations qualify as adverse employment actions under the "reasonable employee standard."  *See McGowan*, 472 F.3d at 741.  After reviewing the record, the Court agrees with Defendant.  The standard announced by the Supreme Court in *Burlington Northern & Santa Fe Railway Company v. White*,  548 U.S. 53, 67-68 (2006), provided that for an injury or harm to be actionable retaliation, it must rise to the appropriate level of seriousness that would dissuade "a reasonable worker from making a supporting charge of discrimination."  Here, Defendant directed the Court to a number of cases specifically holding that a number of Plaintiff's allegations do not constitute adverse actions.  *See* Mot., at 22-23.  *See also Von Gunten v. Maryland*, 243 F.3d 858, 869-70 (4th Cir. 2001)(holding that "hyper-scrutiny" of sick leave requests, even where other employees were not required to provide written documentation for their absences, did not amount to an adverse action or a retaliatory hostile work environment).

Further, a review of the record yields only Plaintiff's unsupported speculation that the enumerated actions constitute a hostile work environment.  *See, e.g., Stover v. Martinez*, 382 F. 3d 1064, 1074 n.2 (10th Cir. 2004)(holding that "an individual's subjective belief that she has been discriminated against is insufficient to preclude a grant of summary judgment").

In addition, as succinctly argued by Defendant in his Motion and Reply, Plaintiff's repeated actions in pursuing individual claims before the EEOC serve to negate her argument that a reasonable employee confronted with the same kind of adverse employment actions would have been dissuaded from raising additional challenges to the alleged ongoing discrimination. Mot. at 24; Reply at 7.  As the alleged conduct by Defendant did not discourage her from challenging the perceived discrimination, Plaintiff cannot meet the second element of her claim. *See, e.g., Somoza v. University of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008)(holding the fact that an employee continues "to be undeterred in his or her pursuit of a remedy . . . may shed light as to whether the actions are sufficiently material and adverse to be actionable.").  Accordingly, Plaintiff has failed to establish a *prima facie* case of retaliation.

**IV.**   **Conclusion**

Plaintiff has failed to establish genuine issues of material fact in support of her claims of gender disparate treatment, disability discrimination, hostile work environment and retaliation for protected activities.  Accordingly, all of her claims must be dismissed.

WHEREFORE,

**IT IS ORDERED** that *Defendant's Motion for Summary Judgment*, filed December 18, 2007 (*Doc.* 33), is **GRANTED** and Plaintiff's Second Amended Complaint is dismissed in its entirety with prejudice.

16

Dated August 13, 2008

s/John Edwards Conway

_____

SENIOR UNITED STATES DISTRICT JUDGE
Sitting by Designation from the
District of New Mexico

Counsel for Plaintiff:

David J. Holdsworth, Esq.
Sandy, Utah

Counsel for Defendant:

Carlie Christensen, AUSA
Amy J. Oliver, AUSA
Salt Lake City, Utah